Okay, Mr. Horne. We'll hear from you. Representing Ms. McMullin. Your Honor, my name is Dennis Horne. As you indicated, I represent Gale McMullin, who based upon a Fifth Circuit case that Your Honor, Judge Jolly, wrote in 2001, Blow v. City of San Antonio, Gale McMullin is entitled to prevail in this case. The two cases are on all fours, and I would like to, to a certain extent, back into life, actually. In this situation, the Mississippi Highway Safety Patrol deliberately departed from its stated hiring practices as a pretext for race discrimination for not promoting Trooper McMullin to the position of Training Director. The players in this matter are, players, parties and players, are Gale McMullin, who's white, Colonel Donnell Berry, who's the Chief of the Highway Patrol in charge of hiring and firing, who's black, Marshall Pack, who is black, and Marshall Pack was the person who was ultimately promoted by Colonel Berry to this Training Director position, but there are five or six explanations as to what job he received and why he received that job, which create material issues of fact. There also are material issues of fact about whether or not Gale McMullin applied for the Training Director position itself, keeping her in court, and that was the issue in the Blow case. The Highway Patrol in Mississippi has a policy which requires notices of all job openings to be sent by mail to all sworn employees. They're sent by email. They're sent by telefax. They are sent by posting in common areas where the troopers work. There was a captain named Chris Gillard who was Director of Training, and this is a training office that trains highway patrolmen as opposed to the other training office that trains police officers from around the state. He was promoted and left that position. As was customary with the Highway Patrol, when Gale McMullin heard that Captain Gillard was being promoted, she hand-delivered a letter to Donnell Berry, the Training Director, Natalie Holmes, HR Director, who is also black, and Albert Santa Cruz, and again, Colonel Berry makes the decision. The letter is dated February 27, 2012, and she expressed interest and wanted to be considered for that captain of the training. All witnesses who testified by deposition admitted again that it was policy within Highway Patrol to submit applications by letter. Ignoring Gale McMullin's letter, on March 19, 2012, Colonel Berry transferred Gale to a non-sworn law enforcement officer job, and she was lieutenant over communications, which means she was in charge of dispatch, basically, and then other records, but basically, and these are, she was supervising non-law enforcement people who worked in dispatch and communications. Without notifying Gale, on March 6, 2012, Colonel Berry had issued a position open notice, and this time, in the position open notice, he indicated that the position was going to be for a lieutenant director of training and not captain director of training. Gale McMullin never received written notice or any notice whatsoever that a lieutenant position had been advertised. Well, was that really a separate position? What is the evidence that there were ever really two positions open? There is no evidence that there were two positions open, Judge. So this lieutenant's position is actually the captain's position that the client had applied for? In discovery and in depositions, there were actually six explanations given as to what position was open and what was applied for. All right, the first one was Marshall Pack got a letter saying you are going to be promoted to lieutenant director of training with no baggage attached, no language. That's first. The second position was that the lieutenant position Mr. Pack had was acting only, even though the letter said he had the job, and that the captain's position was open. That's the second position. The third position was there was no vacancy in the training director position when Gale McMullin gave her letter application to Colonel Berry. The next position, excuse me, they said that the training director position vacated by You're given the job. The job is acting. A lieutenant instead of a captain? Excuse me? A lieutenant instead of a captain? Yes, sir. I mean, just reading the briefs, I mean, it seems to me, and what is of the record, it seems to me like I've never seen such manipulation to deny a person a job. I mean, it certainly appears on the face of it. Yes, sir. Yes, sir. That's our position. I know it is. That's a friendly comment. Yes, sir. The posting was for only one position, right? Yes, sir. The position didn't say acting, didn't say there would be a lieutenant and a captain. It's just one position. And what compounded the manipulation or explained the manipulation was Marshall Pack had not been a master sergeant for ten years or a lieutenant for two years, so he was not eligible to be captain. And so without telling Gale McMullin, Berry came back around and advertised lieutenant without telling her about it and gave whatever job he gave to Pack. In a deposition, I asked Colonel Berry flat up, why did you fill this job with a lieutenant instead of a captain? He said, quote, I have no explanation, quote. Let me cut through some of this, if I may. Yes, sir. Sure, sir. If we get to the place, position, that we believe that your client made a prima facie case of discrimination, my understanding of the record is that the prosecution has no reason for rebutting this. Is that correct? That's absolutely correct. What the Department of Public Safety, the position? So if we have a prima facie case and no evidence of, and no case put on of a criminal case, how can we just decide that having failed to do so, hold that she prevails and remand only for a determination of the damages? I believe it would be in the court's discretion to look at either remedy. Remand for trial, I guess. Yes, sir. You'd be remanded for trial. I think Judge Weiner's question was whether it would be remanded for trial with a preemptive instruction that the Department of Public Safety is liable, we're going to try it on damages. I think that's what . . . Or would a trial include the right to that or have they waived it? Well, I would argue it's been waived if this case is remanded. At this point, I would argue that it's been waived. Again, I believe it's within this court's authority within the jurisprudence to find liability on the Department of Public Safety for not rebutting a prima facie case, remanding the trial on damages only. Brenda, summary judgment for you? It's in your discretion, Your Honor. Well, I know, Brenda. Yes, sir. We did not move . . . That just prolongs agony. Yes, sir. We did not . . . You need to get the thing over with, have a trial, see what happens. Yes, sir. We'd be very happy with that. Well, up until the jury verdict, you may or may not be. Yes, sir. I've lost a few. We all have. But I did not move for summary judgment, Your Honor, as Judge Jolly pointed out. The next point is Judge Reeves, in his opinion, held that, based on deposition testimony, that Gail McMullen had not applied for, quote, the lieutenant's position or whatever that position is. And I wanted to point out, if I could, that if you look at the questions asked Gail McMullen about whether she was interested in the lieutenant's position, and Gail didn't learn about the lieutenant's position until after Mr. Pack was hired, whatever position he was hired, and we got into litigation. There were serious questions asked by Mr. Cleveland, said, back at the time you applied, were you interested in the lieutenant's position? No, sir. I wanted a promotion to captain. Were you looking at the lieutenant's position? And a series of questions appear on pages 113 and 114 of the record. You were looking to become a captain? Yes, sir. In that position? Yes, sir. The training director position as a captain? Yes, sir. The problem was Peter Cleveland's questions were in the past tense, making reference to what she wanted when she issued her February 27, 2012 application. At that time, she understood the position would be a captain's position because it had been a captain's position for 20 or 30 years. I came back on my questioning at the end of the deposition and asked Gail, at the time you say you applied as a captain, if you had known you were going to get transferred to your current job of training, would you have considered taking the training officer job as a lieutenant? Yes, sir. I would have considered it. I would have considered it. So if you put the question properly in the present tense, she would have considered it. Back when she applied, this lieutenant position had not existed for 30 years, and I just wanted to make that semantical distinction. Briefly, in the Blow case, the El Paso, Texas, I'm sorry, San Antonio, Texas library system was going to fill a documents library in three slots. Ms. Blow was black, and she was a documents library in two. And the boss of Ms. Blow told her that they were going to put together an eligibles list, and you should apply. Well, before that eligibles list came out, the boss hired somebody else who was white off of that list, before the list was even published, as required by ordinance of the city. And the district court, as here, found that Ms. Blow hadn't applied, and this court reversed that and said, certainly there's a material issue of fact as to whether or not she did apply, because the city deviated from its settled policies in receiving applications, and it certainly happened here. Colonel Berry lost Gil McMullen's letter. It wasn't in a personnel file. He had no explanation why he hired a lieutenant. Also, just briefly, the two minutes I have left, this Marshall Pack fellow, in terms of comparative qualifications, Mr. Cleveland, in his brief, says Pack was more qualified as an assignment of error. That shows my age. Well, I guess he is an assignment of error still. And then he says she wasn't qualified because she didn't apply. He never makes any argument that she wasn't qualified. In the record below, everybody admitted Gail was qualified. In fact, she was overqualified. She had been a lieutenant seven years, worked 25 years, got accommodation from the governor, and it's just comparisons aren't even close. In fact, Mr. Pack, when he was a sworn Mississippi Highway Patrol officer working as a narcotics agent, was fired once for having sex with a snitch, a confidential informant, and he got reinstated because all the other narcotics agents also were having sex with their informants. And the second time— An upstanding organization. That's right. And the second time he— Mr. McMullen doesn't—does she still work there? Oh, yes, sir. He was— Does she want this job or does she just want the damages? She wants this job, both. And, I mean, she's— And attorney's fees. Yes, ma'am, and attorney's fees. I remember that. The second time Mr. Pack was fired because he took money from confidential informants that they were supposed to buy drugs with and kept it instead of turning it over to the patrol. He got reinstated somehow. It's not clear in the record. The third time he got fired, he was at Black Spring Break and was videoing strippers in his hotel room. And the record's not clear— I'll tell you, a guy knows how to have a good time. Yes, sir. And the record's not clear how he got reinstated. And finally, my final few seconds, Colonel Berry said he didn't remember if he knew about his past—Pack's past history, but if he had known, it would have no impact on putting him in the training director's job. Okay, Mr. Horne. Thank you. Mr. Cleveland. You've got a pretty tough case here to defend. Speaking as one judge. My name's Peter Cleveland, and I am here on behalf of the defendants. Sounds like I have a pretty steep row to hoe. I mean, on the basis of what I've read, but you— Well, I'll give it my best shot, but at the outset, I need to say that on this record, the non-discriminatory reason advanced by the department is not really at issue, and the idea to remand the case with instructions is not before this court. It is whether—solely whether the propriety of granting summary judgment— Well, that's what I'm saying. Reverse the summary judgment. And send it back for trial, if that's your prerogative. But here, this is a— What is the non-discriminatory reason set forth? She didn't apply. She did not apply for the captain's—for the lieutenant's position. How could she?  And it didn't exist when she applied for the captain's position. The application she submitted, she wanted to be considered for the—for captain. That was her deposition testimony. Which was still open, according to your people—some other people's testimony, but she was still never even offered that position if it was still open. It had not been filled. What? Colonel Berry is the one that said that there were two positions. Well, isn't the truth of the matter what was being filled was the training supervisor? It didn't matter what the rank was. I mean, that's lint, Pinkett, to say, oh, it was a lieutenant, not a captain, or captain, not a lieutenant. It was going to be two people in that training director role. Right. It had been filled in the past, historically, by a captain, and here there was going to be a captain and a lieutenant, and they were filling the lieutenant position first. All of a sudden, but why? The record doesn't support two. I mean, it was— Your client testified it was one position. Colonel Berry said it was two positions. He said another. And that he was filling the lieutenant position first. You know, I'm going to tell you, it would be real easy to beat you up on this case, and I'm not going to do it. I'm just going to let you make your argument as far as I'm concerned. Thank you, Judge. The prima facie case requires the plaintiff to show that she is a member of a protected class, that she applied and was qualified, that she was rejected, and after the rejection, the position was filled by a non-protected person. In this regard, the Blow case is troublesome, Blow v. San Antonio, because it does not refer to the third point of the prima facie case as being rejected. It simply says that the person was not promoted, which is not supported by the Supreme Court decision, Texas Department of Community Affairs v. Burdine, which uses the language rejected, and also the Grimes v. Texas Department of Mental Health, which uses the term rejected, and Haines v. Pennzoil. Blow v. San Antonio is also troublesome and has no application here because it does not involve, there was no question in that case about whether there was a prima facie case. There was a severe deviation from normal hiring procedures, and there was active concealment of a job opening, and the plaintiff was misled by a member of the hiring team. None of these . . . There wasn't this active concealment. The testimony of Natalie Holmes, she said that this was handled, the vacancy and the open notice was posted and sent out as in the normal course and scope, normal procedures were followed, and there's no proof otherwise. There's speculation on the part of the plaintiff that this was some grand conspiracy to keep Gail McMullen from the job, but there's no proof of that. Well, I think the way I read it is it's a minor conspiracy to give it to Pack. It's not a grand one to deny her. Nobody else had notice of that. There were two applicants for the position, Pack and another African-American male. Those were the only two applicants. And the one who was deciding it was African-American? Yes. So where was the notice, and what happened to her application? It was posted on the website. It was sent to each troop. It was supposed to have been, I think, emailed or mailed to eligible parties. Why she didn't get it, we don't know. No one knows. But the normal procedures were followed. So you're saying she didn't get it. Do you have any proof that it was sent to her? I mean, emails are easy to trace. No, I do not have any proof, and there's none in the record. Plaintiff was aggrieved by the defendant's decision and filed her charge of discrimination. In her charge, which was an exhibit to defendant's motion, in paragraph three, she says that she applied for the training director position, and the job for which she applied carried a captain's rank. Not that she was applying for the lieutenant position. In paragraph six of her charge, she states the charging party has been discriminated on the basis of her race, white, by not being given the position of training officer for the highway patrol, along with the rank of captain. She was looking for the captain's position. It's critical to remember that there were two positions, the lieutenant in the training division and the captain in the training position. Had there ever been before? Had there ever been? I know historically it had been held by the captain. One person, there was one position. It was a captain, but there was never two positions before this. On the record, that is correct. So how does it show nothing was said, this is one of two positions, when they posted it? They just posted it as a lieutenant. They posted it as a lieutenant position. But not as two. And I believe that the witness testified there was only one position. Not the plaintiff, but your witness. No, my witness said that there were two positions, and he decided to fill the lieutenant position first. That's what Colonel Berry said, and that there's no dispute as to that. On these facts, on the plaintiff's memo, on her deposition testimony that was cited by the district court, that she wanted the promotion to captain, and only the lieutenant's position was filled, the defendants moved for summary judgment, arguing there's been no showing of a prima facie case. We didn't get to the issue of whether of the non-discriminatory reason. Blow v. San Antonio is not applicable here, because in that case, there was no question that there was a prima facie case. Here, the plaintiff cannot show that she was rejected for the position. She said she wasn't interested in the lieutenant slot. That is quite different from saying I would have considered it, and that's not what she did. She applied for the captain slot. Judge Reeves agreed. The captain slot in training remained open. She wasn't rejected. The third and fourth elements of a prima facie case have not been met. Judge Reeves did not decide any facts. He made some observations about her memo, expressing an interest in the position. Her deposition testimony that she wanted a promotional transfer, but these matters are not necessary for Judge Reeves' opinion. She was not considered because she did not apply. In response, the plaintiff offers speculation that there was a conspiracy to prevent her from applying, that the ultimate goal was to promote PAC to the captain slot, that somehow the defendant's regulations were violated by filling the slot with a lieutenant rather than a captain, and an improper reason for the plaintiff's transfer to communications. In further response, the plaintiff offers irrelevant matters, which only confuse, arguing the race of the decision makers and a comparison of the qualifications, PAC's alleged misconduct and whether Colonel Berry was aware of that misconduct. These matters are immaterial. What the plaintiff can't overcome is showing that she was rejected, and that is fatal to her claim. Thank you. Larry, I have one more question for you. Can you imagine what this case would be and how it would be treated if the races were reversed, if she had been black and all of the other people had been white? I would hope that the result would be the same. I would, too. Mr. Cleveland, you can tell the Attorney General you took one from the team today. I don't think we need any rebuttal on this. That concludes the arguments that we heard. We have an oral argument calendar today, so we will stand in recess.